UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CHRISTIAN URBINA,

                            Plaintiff,                          15-cv-8647 (PKC)

            -against-                                           MEMORANDUM
                                                                AND ORDER


PORT AUTHORITY of NEW YORK and NEW
JERSEY,

                            Defendant.
-------------------------------------------------------------x

CASTEL, Senior District Judge:

            Plaintiff Christian Urbina brings this action against his employer, the Port

Authority of New York and New Jersey (the "Port Authority"), under the Civil Rights Act of

1871, 42 U.S.C. § 1983, alleging that he was deprived of liberty and property without due

process of law in violation of the Fourteenth Amendment.  Urbina, who is currently employed by

the Port Authority as a police officer, has been suspended without pay since approximately

August 14, 2012, shortly after he was arrested in Manhattan by officers of the New York City

Police Department ("NYPD").  All criminal charges against Urbina have since been dismissed.

As of the filing of the parties' cross-motions for summary judgment, plaintiff had not had a

formal hearing before the Port Authority to determine his future employment status.  Urbina

claims that he has been deprived of his property interest in continued, paid employment with the

Port Authority, as well as his liberty interest in his good name, without due process of law, and

seeks compensatory and punitive damages.  The Port Authority seeks dismissal of both claims.

Plaintiff cross-moves for summary judgment in his favor on his claim for the denial of his

property interest in his employment without due process.

For reasons to be explained, the Port Authority's motion for summary judgment is granted with respect to Urbina's claim for the deprivation of his liberty interest in his good name. Urbina's motion for summary judgment is granted with respect to his claim for the deprivation of his property interest in continued employment with the Port Authority, and the Port Authority's motion for summary judgment with respect to that claim is denied, except that summary judgement is granted in its favor insofar as punitive damages are sought.

BACKGROUND

The following facts are not disputed by the parties unless noted.  Christian Urbina is currently employed by the Public Safety Department of the Port Authority and designated as a police officer under New York law.  (Pl.'s 56.1 Counterstatement, December 23, 2016, Dkt. 28 ("Pl.'s 56.1 CS") at ¶¶ 3-4.)  He was hired by the Port Authority effective January 8, 2007, and became a sworn police officer on May 30, 2007.  (Pl.'s 56.1 CS ¶ 4.)  On August 12, 2012, Urbina was arrested by officers of the NYPD at *La Marina* Restaurant in Manhattan.  (Pl.'s 56.1 CS ¶ 6.)

The events leading up to Urbina's arrest are disputed but are not material to this Court's rulings on the motions.  The Port Authority claims that Urbina groped a female patron of the restaurant, argued with the woman, and was approached by an officer of the NYPD and told to move along.  (Pl.'s 56.1 CS ¶ 7.)  According to the Port Authority the confrontation escalated from there, with Urbina screaming and spitting at the officer and saying that he would not leave. (Pl.'s 56.1 CS ¶ 8.)  The Port Authority claims that when the officer attempted to handcuff Urbina he became physically combative and was pepper sprayed.  (Pl.'s 56.1 CS ¶ 9.)  Urbina challenges this version of events in its entirety, admitting that he was present at the restaurant,

but claiming that there was no altercation and that he did not know why he was arrested.  (Pl.'s 56.1 CS ¶¶ 7-9, 13.)

The remaining facts are undisputed.  Urbina was released and issued a Desk Appearance Ticket.  (Pl.'s 56.1 CS ¶ 10.)  He was charged by the New York County District Attorney's office with Resisting Arrest and two counts of Disorderly Conduct.  (Pl.'s 56.1 CS ¶ 11.)  These charges were dismissed over a year later on April 1, 2014.  (Pl.'s 56.1 CS ¶ 12.)

Urbina was suspended without pay from his position with the Port Authority by at latest August 14, 2012.  (Def.'s 56.1 Counterstatement, January 20, 2017, Dkt. 32 at ¶ 9.)  The continuation of Urbina's suspension was approved on August 16, 2012.  (Pl.'s 56.1 CS ¶¶ 17-18.)  By letter dated July 31, 2013, Charges and Specifications (Port Authority discipline) against Urbina were issued and served.  (Pl.'s 56.1 CS ¶ 19.)  His case was assigned a docket number and added to the Police Benevolent Association Discipline Docket.  (Pl.'s 56.1 CS ¶ 19.)  Urbina's discipline was still pending on the Police Benevolent Association Discipline Docket as of December 2016, over four years after his suspension.  (Pl.'s 56.1 CS ¶ 21.)  This action was commenced November 3, 2015.  (Dkt. 1.)

LEGAL STANDARD

On a motion for summary judgment, the Court views all evidence of record in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief as a matter of law.  Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).  In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants.  Rule 56(c)(3), Fed. R. Civ. P.  In the absence of any disputed material fact, summary judgment is appropriate.  Rule 56(a), Fed. R. Civ. P.

DISCUSSION

I.    Urbina's Property Interest in Continued, Paid Employment with the Port Authority.

By suspending him without pay and then denying him a hearing for more than four years, the Port Authority deprived Urbina of property without due process of law in violation of the Fourteenth Amendment.

The Second Circuit has described the two step analysis appropriate for procedural due process claims:

> The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution.  If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process.  The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review.

Narumanchi v. Bd. of Trs., 850 F.2d 70, 72 (2d Cir. 1988) (emphasis and internal citation omitted); see also Proctor v. LeClaire, 846 F.3d 597, 608 (2d Cir. 2017) ("To prevail, [plaintiff] must be able to demonstrate (1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process.") (internal quotation marks omitted).

Urbina possessed a property interest in continued, paid employment with the Port Authority.  Property interests protected by the Fourteenth Amendment are not defined by the Constitution; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).  Public employees who may only be terminated for cause have a property interest in continued employment protected by the Fourteenth Amendment.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985).  The Second Circuit recognizes that the suspension of such public employees "without pay implicate[s] a protected property interest." Narumanchi, 850 F.2d at 72 (suspension of tenured professor without pay implicated property interest protected by Fourteenth Amendment); see also Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist., 902 F.2d 208, 211 (2d Cir. 1990) (tenured teacher prevented from returning to work after voluntary sick leave was deprived of property interest requiring due process consistent with Fourteenth Amendment).

It is undisputed that Urbina could only be terminated, or suspended without pay, for cause.  Urbina thus had a protected property interest in continued employment with the Port Authority.  He could thus not be suspended without pay by the Port Authority consistent with the Fourteenth Amendment unless he was afforded due process.

Next, this Court must determine how much process Urbina was due, and whether he received such process.  Though Urbina's property interest in continued employment with the Port Authority arises from state law, "[f]ederal constitutional standards rather than state statutes define the requirements of procedural due process." Robison v. Via, 821 F.2d 913, 923 (2d Cir. 1987).  As the Second Circuit has explained in a summary order, "the question in a § 1983 suit claiming deprivation of a property interest without due process is not whether state procedural law was correctly followed or applied, but whether the process actually provided satisfies the requirements imposed by the Constitution." Coles v. Erie Cty., 629 F. App'x 41, 42 (2d Cir. 2015) (summary order).

Courts must balance three factors in order to determine what process must be afforded individuals before the state may deprive them of a protected property interest: "(1) the private interest affected by the official action; (2) the risk of erroneous deprivation under the challenged governmental course of action and the probable value of providing additional procedural safeguards, and (3) the government's interest." Rosu v. City of New York, 742 F.3d 523, 526 (2d Cir. 2014) (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).  The Supreme Court has identified the relevant interests at stake in the public employment context: "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." Loudermill, 470 U.S. at 542-43.

The Due Process Clause requires an "opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333 (internal quotation marks omitted). Precedent recognizes that there is both a predeprivation and postdeprivation component to due process.  "[W]here a State must act quickly, or where it would be impractical to provide

predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997). "An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." Fed. Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 240 (1988).

Predeprivation process in the public employment context requires only "'an initial check' to determine whether there are reasonable grounds to support the proposed action." Strong, 902 F.2d at 212 (quoting Loudermill, 470 U.S. at 545-46). The Supreme Court has specifically held that the balancing of interests permits the suspension of a police officer without pay upon a showing that he has been arrested and charges against him have been filed. Gilbert, 520 U.S. at 933-34 ("arrest and charge give reason . . . to assure that the state employer's decision to suspend the employee is not baseless or unwarranted in that an independent third party has determined that there is probable cause to believe the employee committed a serious crime") (internal quotation marks and citation omitted). However, the Court in Gilbert contemplated that "the suspended employee [would] receive[] a sufficiently prompt postsuspension hearing," that the "lost income [would be] relatively insubstantial," and that "fringe benefits such as health and life insurance" would be unaffected. Id. at 932. As the Court acknowledged, "[o]nce the charges were dropped, the risk of erroneous deprivation increased substantially, and . . . there was likely value in holding a prompt hearing." Id. at 935. The Supreme Court has stated in the public employment context that "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." Loudermill, 470 U.S. at 547.

In the context of the Federal Deposit Insurance Corporation's suspension from office of an indicted official of a federally insured bank, the Supreme Court held that:

> In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.

Mallen, 486 U.S. at 242.

The Supreme Court has found that the 15-day suspension of the license of a harness racing horse trainer without "a prompt postsuspension hearing," that is, "one that would proceed and be concluded without appreciable delay," violated the Due Process Clause.  Barry v. Barchi, 443 U.S. 55, 59, 66 (1979) ("Once suspension has been imposed, the trainer's interest in a speedy resolution of the controversy becomes paramount, it seems to us.  We also discern little or no state interest, and the State has suggested none, in an appreciable delay in going forward with a full hearing.")

The Second Circuit found that a firearms dealer whose license was suspended for 58 days was denied due process where the city did not provide a postsuspension hearing during that period.  Spinelli v. City of New York, 579 F.3d 160, 173-74 (2d Cir. 2009).  As in the present case, the plaintiff in Spinelli had an interest in "pursuing a particular livelihood," the "interim period between erroneous deprivation and reinstatement [could] be financially devastating," and in the event of erroneous deprivation the plaintiff could not be "made whole simply by reinstat[ement]."  Id. at 171 (internal quotation marks omitted).

In the analogous context of a plaintiff's delay in receiving benefits from a city program, the Second Circuit found that the district court "should engage in a factual inquiry to determine whether the burdens and delays imposed by the city were reasonable."  Kraebel v. New York City Dep't of Hous. Pres. & Dev., 959 F.2d 395, 406 (2d Cir. 1992).  Among the

factors the district court was instructed to consider were "the procedures actually used by the city" to make its determination, "the factors the city considers, the level of difficulty in making the determination, the amount of work required, the amount of decision-making discretion given to the employees, the need for and availability of administrative appellate review, the necessity for the paperwork and supporting documentation required, the amount of time required to process similar claims," and other factors.  Id.

The Court need not decide precisely within how long a public employee suspended without pay must be afforded a hearing before such delay constitutes a denial of due process.  Based on the evidence presented by the parties, no reasonable jury could find that the ongoing delay, already more than four years since Urbina was suspended, and more than three years since the criminal charges against him were dismissed, was reasonable.  The Court thus finds that the Port Authority deprived Urbina of his protected property interest in continued employment without due process of law and grants summary judgment in favor of Urbina as to this claim.

Urbina's claim is timely.  Claims brought under section 1983 are subject to the three-year statute of limitations applicable to personal injury actions in New York.  Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir. 2001).  "While the applicable statute of limitations in a § 1983 case is determined by state law, 'the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.'"  Smith v. Campbell, 782 F.3d 93, 99 (2d Cir. 2015) (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)) (emphasis in original).  Instead, "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  Id.

While Urbina commenced this action approximately three years and three months after his initial suspension, the Court concludes that his claim accrued less than three years before the filing of his compliant.  A claim for the deprivation of property without due process based on a delay in a postdeprivation hearing does not arise until that delay has become unreasonable.  Cf. Knox v. Davis, 260 F.3d 1009, 1015 (9th Cir. 2001) ("procedural due process claim accrues when a plaintiff is given final notice that she would not receive further process" or when plaintiff requests a hearing and is denied).  This delay did not become unreasonable until more than three months had elapsed after Urbina's suspension without pay.

In the alternative, the Court finds that if Urbina's claim accrued on the date of his suspension, then the complaint is still timely under the continuing violation doctrine.  In the context of employment discrimination, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  Washington v. Cty. of Rockland, 373 F.3d 310, 317 (2d Cir. 2004) (omission omitted).  At least one magistrate judge within this district has extended this doctrine to claims for violations of procedural due process.  See Remigio v. Kelly, No. 04 cv 1877 (JGK) (MHD), 2005 WL 1950138, at *11 (S.D.N.Y. August 12, 2005) (holding that a procedural due process challenge to defendant's ongoing seizure of plaintiff's car was timely under the continuing violation doctrine even though the seizure occurred outside of the three-year statute of limitations applicable to section 1983).  As Magistrate Judge Dolinger explained, "[e]ach day that the defendants failed to hold a hearing . . . was another instance of the defendants' continuing and incrementally increasing unlawful conduct."  Id.  Thus "plaintiff's claim, insofar as it is based on the daily failure of defendants to conduct a hearing during the three years prior to plaintiff's filing of this lawsuit," is timely.  Id.

II.   Urbina's Liberty Interest in His Good Name.

In order for a public employee to succeed on a claim for the deprivation of a protected liberty interest in the employee's good name in the context of an adverse employment action, such as termination or suspension, that employee must meet the "stigma-plus" standard. Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) ("certain circumstances surrounding the non-continuance of employment might give rise to a claim of denial of a liberty interest"). The stigma-plus standard requires plaintiffs to show: "1) that they were defamed; and 2) that the defamation occurred in the course of the termination of governmental employment or was coupled with a deprivation of a legal right or status." Id. In order to "show defamation, the plaintiffs must show that the statements complained of were false; that they stigmatized the plaintiffs; and that they were publicized." Id. at 101-02.

Urbina acknowledges the standard by which his claim must be evaluated and does not make a serious attempt to demonstrate adherence to this standard. While Urbina argues that the Port Authority's refusal to afford him a forum in which to clear his name is sufficient, (Pl.'s Mem. in Op. and Supp., December 23, 2016, Dkt. 25 at 19), he does not cite any precedent supporting this contention and this Court is aware of no such precedent. Urbina has not pointed to any evidence suggesting that the Port Authority publicized any statements in connection with his suspension. He has presented no evidence that any statements made by the Port Authority were false (plaintiff admits he was arrested and charged). No reasonable jury could find in favor of Urbina and, thus, the Court will grant summary judgment to the Port Authority on this claim.

III.   Punitive Damages.

Though the Second Circuit has never addressed the issue of whether punitive damages are permitted against the Port Authority, the Third Circuit and the overwhelming

majority of district courts within this Circuit have held that it is not.  See e.g., Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 357-58 (3d Cir. 2001); Martinez v. Port Authority of N.Y. and N.J., No. 01 cv 721 (PKC), 2005 WL 2143333, at *1 n.2 (S.D.N.Y. Sep. 2, 2005); Vernon v. Port Authority of N.Y. and N.J., 222 F. Supp. 2d 844, 860 (S.D.N.Y. 2001) (Leisure, J.); Recreation World, Inc. v. Port Authority of N.Y. and N.J., Nos. 96 cv 5549 (LAP), 97 cv 5029 (LAP), 1998 WL 107362 at *11-12 (S.D.N.Y. March 9, 1998) (Preska, J.)  The Third Circuit has reasoned that the Port Authority is a hybrid entity with substantial connections to government and enjoys the same immunity from punitive damages that a municipality would.  Evans, 273 F.3d at 356-358.  This Court agrees and concludes as a matter of law that punitive damages are not available against the Port Authority.

CONCLUSION

Because no reasonable jury could find in favor of the Port Authority with respect to Urbina's claim that his suspension without pay deprived him of property without due process of law in contravention of the Fourteenth Amendment, Urbina's motion for summary judgment (Dkt. 24) is GRANTED as to that claim (First Cause of Action).

Because no reasonable jury could find in favor of Urbina with respect to his claim that his suspension without pay deprived him of his liberty interest in his good name without due process of law, the Port Authority's motion for summary judgment (Dkt. 17) is GRANTED as to that claim (Second Cause of Action), and as to plaintiff's claim for punitive damages. Defendant's motion is DENIED in all other respects.

Urbina shall submit a proposed judgment within 14 days through the Orders and Judgments Clerk and file an affidavit in support of the damages calculation.  The Port Authority may respond 7 days thereafter.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        August 18, 2017